No. 115,434

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LCL, LLC,

v.

JAMES W. FALEN, in his capacity as Sole Trustee of THE JAMES W. FALEN LIVING TRUST U/A dated April 30, 2007; JULIE D. FALEN; GREGORY A. FALEN; and MARYL M. WESOLOWSKI (Defendants/Third-Party Plaintiffs),
*Appellants*,

v.

RICE COUNTY ABSTRACT & TITLE CO., INC. (Third-Party Defendant),
*Appellee*.

SYLLABUS BY THE COURT

1.

The standard of review relating to summary judgment is discussed and applied.

2.

Any allegation that a plaintiff's claim is barred by the statute of limitations must be pled by a defendant as an affirmative defense.

3.

With limited exception, a tort action in Kansas is not deemed to accrue until the act giving rise to the cause of action first causes substantial injury, or if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party.

1

4.

In construing the statute of limitations for tort actions, the phrase "substantial injury" means "actionable injury." The true test to determine when an action accrues is that point in time at which plaintiff could first have filed and prosecuted an action to a successful conclusion.

5.

To state a claim for negligence upon which relief can be granted, a plaintiff must plead the following essential elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that legal duty; (3) the breach of that legal duty caused plaintiff injury; and (4) the plaintiff sustained damages as a result of the injury.

6.

Because a cause of action does not accrue until all of the essential elements are satisfied, an injury allegedly caused by a defendant's negligence does not become actionable until the plaintiff sustains damages as a result of the injury.

7.

The phrase "reasonably ascertainable" requires application of an objective standard that takes into account all of the surrounding circumstances.

Appeal from Rice District Court; STEVEN E. JOHNSON, judge. Opinion filed February 17, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Gordon B. Stull* and *Josh V.C. Nicolay*, of Stull, Beverlin, Nicolay & Haas, LLC, of Pratt, for appellants.

*Jeffrey C. Baker*, *William P. Denning*, and *Kaitlin M. Marsh-Blake*, of Sanders Warren & Russell LLP, of Overland Park, for appellee.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

STANDRIDGE, J.:  The question presented on appeal is whether the applicable statute of limitations precludes James W. Falen, in his capacity as Sole Trustee of The James W. Falen Living Trust U/A dated April 30, 2007; Julie D. Falen; Gregory A. Falen; and Maryl M. Wesolowski (the Falens) from pursuing claims of negligence, breach of implied contract, and breach of fiduciary duty against Rice County Abstract & Title Company, Inc. (RCAT). The district court answered this question in the affirmative and, accordingly, entered summary judgment in favor of RCAT. We agree with the district court with regard to the Falens' claim alleging breach of implied contract. But we find the statute of limitations does not prevent the Falens from pursuing their claims of negligence and breach of fiduciary duty. As such, we reverse the summary judgment in favor of RCAT on those two claims and remand so the case can proceed accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff LCL, LLC (LCL) originally filed this lawsuit against the Falens seeking to quiet title to an undivided one-half interest in mineral rights associated with 203.2 acres of surface farmland in Rice County, Kansas (the subject property). The Falens filed a counterclaim against LCL seeking to quiet title to those same mineral rights, but in their favor. The Falens also filed a third-party lawsuit against RCAT for negligence, breach of implied contract, and breach of fiduciary duty. The underlying suit and counterclaim seeking to quiet title ultimately settled. At that point, RCAT filed a motion for summary judgment in the third-party lawsuit based on the statute of limitations. After the motion was briefed, the court granted summary judgment to RCAT, ruling that the Falens were precluded from pursuing the claims alleged in the suit because the statute of limitations on each of them already had expired.

3

Because the district court granted summary judgment based solely on procedural grounds—the applicable statute of limitation precludes each of the claims asserted—the underlying merits of the Falens' claims of negligence and breach of implied contract are not issues on appeal. Nevertheless, a brief chronology of relevant facts in the record is helpful to our analysis of the procedural issue presented for decision.

- In 1971, Mary Louise Falen and James C. Falen (husband and wife) granted to Mary Louise's brother, John Weber, an undivided one-half ownership interest to minerals associated with the subject property.

- In 1982, Mary Louise (now a single person) and John and Moralee Weber, each owning an undivided one-half interest to minerals associated with the subject property, signed an Oil and Gas Lease in favor of Bert J. Fisher. The 1982 Oil and Gas Lease granted Fisher the right to use the subject property to discover and extract minerals for a term of years in exchange for royalty payments in equal proportion to Mary Louise and John and Moralee consistent with their ownership rights to the minerals in the subject property.

- In 1992, Mary Louise created the Mary Louise Falen Trust (MLF Trust), naming Gregory A. Falen and Julie D. Falen as co-trustees. At some point between 1992 and 2007, Mary Louise transferred into the MLF Trust the entire surface of the subject property and an undivided one-half interest in the minerals.

- On June 1, 2007, the MLF Trust entered into a listing agreement with Farmer's National Company to sell the surface land of the subject property. The listing agreement provided that "'[a]ll minerals currently owned by the seller will be retained as long as minerals are produced and for a period of 20 years after production has ceased.'" An advertising brochure was produced for the property and included a statement that "'[s]eller will retain all owned mineral rights.'"

- On November 20, 2007, the MLF Trust entered into a contract to convey the property listed for sale to Sammy Dean (MLF Trust-Dean Contract). The MLF

4

Trust-Dean Contract provided that the MLF Trust would retain all mineral rights for 20 years after production ceases.

- On December 13, 2007, RCAT issued to Dean a title insurance commitment effective December 13, 2007. Section B(II) of the MLF/Dean Title Commitment noted the following exceptions to title:

> "10.  Terms and conditions of that (producing) Oil & Gas Lease, dated August 10, 1982, recorded in Vol. 98 O & G, on page 583, executed in favor of BERT J. FISHER, leasing subject premises, for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, evidence of which appears of record to extend said lease.
>
> . . . .
>
> "12.  An undivided 1/2 interest in and to all oil, gas and other minerals of whatever kind and nature in, on and under subject premises; as reserved by other than the record title holder in that Warranty Deed, filed August 18, 1971, recorded in Vol. 132, on page 611."

- At some point prior to January 18, 2008, RCAT drafted a deed of sale to convey the property identified in the MLF Trust-Dean Contract from the MLF Trust to Dean. Gregory A. Falen and Julie D. Falen (as co-trustees of the MLF Trust) signed the deed of sale drafted by RCAT.

- On January 18, 2008, RCAT filed and recorded the fully executed deed of sale with the Register of Deeds in Rice County. The deed of sale failed to include the language from the listing agreement and the MLF Trust-Dean Contract providing that the MLF Trust would retain all mineral rights for 20 years after production ceases.

- After the MLF Trust-Dean deed of sale was filed and recorded with the Register of Deeds in Rice County on January 18, 2008, the MLF Trust continued to receive royalties and paid property taxes on those royalties as it had before the 2008 sale.

5

- On March 6, 2008, Dean and his wife conveyed their interest in the subject property to SDM Properties2, LLC (SDM2), and a deed of this transaction was recorded on March 11, 2008. This deed was recorded in the Rice County Register of Deeds office.

- On April 21, 2008, the MLF Trust transferred its right to a one-half undivided ownership interest to the minerals on the subject property to the Falens. This deed was recorded in the Rice County Register of Deeds office. After this deed was recorded, the Falens received royalties and paid property taxes on those royalties as the MLF Trust had since 1992 through April 21, 2008, and did so without interruption until August 1, 2014, which is when LCL first claimed title to the undivided one-half ownership interest to minerals associated with the subject property at issue.

- On May 27, 2010, James W. Falen executed and recorded a quit claim deed to the James W. Falen Living Trust U/A dated April 30, 2007, in which he transferred ownership of his mineral interests in the subject property to his Trust. This deed was recorded in the Rice County Register of Deeds office.

- On May 31, 2012, Greg Falen executed and recorded an Executor's Mineral Deed of Distribution for the purpose of transferring mineral interests in the subject property owned by Lisa C. Falen, who had died. Lisa's mineral interests were transferred in equal parts to the surviving owners:  James W. Falen as Trustee of the James W. Falen Living Trust U/A dated April 30, 2007, Julie D. Falen, Gregory A. Falen, and Maryl M. Wesolowski. This deed was recorded in the Rice County Register of Deeds office.

- On July 5, 2012, James W. Falen executed and recorded another quit claim deed to the James W. Falen Living Trust U/A dated April 30, 2007, in which he transferred ownership of his mineral interests in the subject property to his Trust. This deed was recorded in the Rice County Register of Deeds office.

- In 2014, Sammy Dean (on behalf of SDM2) agreed to sell its interest in the subject property to Ron and Paula Laudick (husband and wife) and Cheryl and Gregg Armstrong (husband and wife) (collectively LCL). In an e-mail dated April 8, 2014, memorializing the terms of the agreement, Ron Laudick stated: "'[We] understand that the mineral rights do not go with the property.'"

- RCAT was chosen to act as both the title insurance agent and the closing agent for the SDM2/LCL sale.

- On April 20, 2014, RCAT issued a title insurance commitment to LCL indicating that SDM2 was the fee simple owner of the subject property. The SDM2/LCL Title Commitment, however, excluded from its obligation:

  "2. Terms and conditions of that (producing) Oil & Gas Lease, dated August 10, 1982, recorded in Vol. 96 O & G, on page 583, executed in favor of BERT J. FISHER, leasing subject premises, for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, evidence of which appears of record to extend said lease.

  . . . .

  "4. An undivided 1/2 interest in and to all oil, gas and other minerals of whatever kind and nature in, on and under subject premises; as reserved by other than the record title holder in that Warranty Deed, filed August 18, 1971, recorded in Vol. 132, on page 611."

- On April 24, 2014, SDM2 entered into a written contract to convey its interest in the subject property to LCL signed by managing member Ron Laudick (SDM2-LCL Contract). The SDM2-LCL Contract failed to include the language from the April 8, 2014, e-mail excluding the interest in mineral rights from the sale.

- On April 29, 2014, RCAT filed and recorded an executed deed of sale for the subject property with the Register of Deeds in Rice County. The deed of sale failed to include the language from the April 8, 2014, e-mail excluding the interest in mineral rights from the sale.

7

- After the sale was completed, LCL contacted RCAT to ask about ownership of the minerals rights and the discrepancy between Dean's representation to LCL that the ownership of the mineral rights in the subject property were not part of the sale and the absence of any language excluding the ownership of mineral rights in the sales contract or the deed of sale filed and recorded with the Register of Deeds. Realizing its mistake, RCAT consulted with its underwriter and was advised that the only way to return the interest in mineral back to its rightful owners (the MLF Trust) was for LCL to execute a deed conveying the minerals to the MLF Trust. RCAT informed LCL of the situation, but LCL stated that it wanted to initiate a claim to the mineral rights on the title insurance policy. It was at this point that the MLF Trust and its successors in interest were first made aware of the defects in the MLF Trust/Dean deed, the Dean/SDM2 deed, and the SDM2/LCL deed in failing to reserve the minerals rights owned by the MLF Trust.

STANDARD OF REVIEW

The district court granted summary judgment to RCAT on the Falens' claims of negligence, breach of implied contract, and breach of fiduciary duty based on its finding that the statute of limitations for bringing those claims already had expired. The court's standard of review on summary judgment is well known.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all fact and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment

8

must be denied.' [Citation omitted.]." *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

When there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). Appellate review is also de novo as to whether the moving party is entitled to judgment as a matter of law when the parties stipulate to the controlling facts. *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012).

ANALYSIS

Any allegation that a plaintiff's claim is barred by the statute of limitations must be pled by a defendant as an affirmative defense. K.S.A. 2015 Supp. 60-208(c)(1)(P). The defendant then has the burden of proving that, when viewed in a light most favorable to the plaintiff, the undisputed facts establish as a matter of law that the statute of limitations prevents the plaintiff from seeking relief on the claim at issue. *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). Whether RCAT has met its burden in this regard necessarily depends on the facts supporting the particular claim alleged by the Falens and the applicable statute of limitations for that claim. Accordingly, we separately address each of the three claims alleged against RCAT.

1. *Negligence*

In the third-party lawsuit filed December 1, 2014, the Falens claim RCAT negligently prepared, filed, and recorded the 2008 deed for sale of the subject property by failing to exclude the interest in mineral rights from the sale. Specifically, the Falens allege that RCAT breached its professional duty to use the degree of skill used by a reasonably competent abstractor, issuer of title insurance commitments, and real estate transaction closer and that RCAT's breach of duty caused the Falens to suffer damages.

9

On appeal, the Falens do not dispute that their negligence claim is subject to the 2-year statute of limitations set forth in K.S.A. 60-513(a)(4). Instead, the Falens challenge the district court's finding with regard to the date upon which their cause of action for negligence against RCAT accrued. With limited exception, a tort action in Kansas is not deemed to accrue "until the act giving rise to the cause of action first causes substantial injury." K.S.A. 60-513(b). If, however, "the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b). RCAT relies on both components of 60-513(b) in asserting the statute of limitations as an affirmative defense here. First, it argues the cause of action for negligence accrued on January 18, 2008, because that is the date the Falens suffered substantial injury. Second, it argues the Falens' injury was reasonably ascertainable to them on January 18, 2008, as well because K.S.A. 58-2222 imparts constructive notice to all persons of the content of a deed when it is filed with the register of deeds. We will address each of RCAT's arguments in turn.

a. *Substantial injury*

For purposes of summary judgment, the district court found that RCAT breached a duty owed to the Falens on January 18, 2008, the date RCAT filed and recorded the deed without reserving the subject property's mineral rights in favor of the Falens. The court also found January 18, 2008, to be the date that the Falens suffered substantial injury, because they lost their legal right to ownership of the minerals on the subject property when the deed was filed and recorded on that day. The court concluded that the Falens' cause of action for negligence accrued on January 18, 2008, which is when RCAT's negligent act (breach and duty) first caused substantial injury to the Falens (the deed was filed without reserving mineral rights in their favor). As a result, the court held the deadline for the Falens to file any claim seeking damages for RCAT's failure to reserve the mineral rights in their favor was January 18, 2010—2 years after the cause of action

10

for negligence accrued. Based on the specific language used by the legislature in K.S.A. 60-513(b), as well as the consistent line of cases interpreting that language, we find the district court erred in finding January 18, 2008, as the date the Falens suffered substantial injury.

In construing the statute of limitations for tort actions, our Supreme Court consistently has interpreted the phrase "substantial injury" to mean "actionable injury." *Moon v. City of Lawrence*, 267 Kan. 720, 728, 982 P.2d 388 (1999); *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 116, 936 P.2d 714 (1997); *Roe v. Diefendorf*, 236 Kan. 218, 223, 689 P.2d 855 (1984); see *Michaelis v. Farrell*, 48 Kan. App. 2d 624, 630-31, 296 P.3d 439 (2013). Consistent with the phrase "actionable injury," our court has held that "[t]he true test to determine when an action accrues is that point in time at which plaintiff could first have filed and prosecuted an action to a successful conclusion." *Knight v. Myers*, 12 Kan. App. 2d 469, 474, 748 P.2d 896 (1988). To state a claim for negligence upon which relief can be granted, a plaintiff must plead the following essential elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that legal duty; (3) the breach of that legal duty caused plaintiff injury; and (4) the plaintiff sustained damages as a result of the injury. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585-86, 214 P.3d 1173 (2009).

Because a cause of action does not accrue until all of the essential elements are satisfied, an injury allegedly caused by a defendant's negligence does not become actionable until the plaintiff sustains damages as a result of the injury. See *Hammig v. Ford*, 246 Kan. 70, 73, 785 P.2d 977 (1990) (to recover negligence claim, plaintiff must show causal connection between duty breached and injury received, and plaintiff must show he or she was damaged by negligence); *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 543, 498 P.2d 265 (1972) (court rejected notion that statute of limitations began to run when defendant insurance agent falsely informed employer it had workers compensation insurance because plaintiff did not suffer damages until

11

plaintiff was denied workers compensation benefits); *Price, Administrator v. Holmes*, 198 Kan. 100, 105, 422 P.2d 976 (1967) (court rejected notion that statute of limitations began to run when will was negligently drafted because plaintiff did not suffer damages until will was found invalid); *Garrison v. Hamil*, 176 Kan. 548, 551, 271 P.2d 307 (1954) (negligence which does not result in injury causing damage forms no basis for a cause of action); *Michaelis*, 48 Kan. App. 2d at 631 (breach of a duty alone is not enough to file and prosecute cause of action; to be sufficient to begin the running of statute of limitations, a party must be damaged); *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 251, 655 P.2d 465 (1982) (court held cause of action did not accrue until after resolution of quiet title action because plaintiffs were not damaged until they lost their interest in the land).

In this case, we find the damage element essential to the Falens' cause of action for negligence did not occur until August 1, 2014, which is when they stopped receiving royalty payments due and owing to them under the 1982 Oil and Gas Lease. In so finding, we acknowledge that the Falens did, in fact, suffer a legal injury when RCAT recorded the deed on January 28, 2008, without reserving the mineral rights in their favor. But this paper injury had absolutely no impact on the Falens' undivided one-half ownership interest to minerals and thus is not actionable or substantial for purposes of starting the accrual period set forth in the statute of limitations. The Falens could not have filed a claim of negligence at that time because a viable claim for damages did not exist. There is no dispute here that the Falens continued to receive royalties and paid property taxes on those royalties after the deed was recorded on January 18, 2008, and did so without interruption until August 1, 2014, which is when LCL first claimed title to the undivided one-half ownership interest to minerals associated with the subject property at issue. And after 2008, the Falens executed, filed, and recorded several deeds transferring between themselves the undivided one-half ownership interest to minerals associated with the subject property at issue. Simply put, there is absolutely no evidence in the record to establish that the Falens were denied the right to use—or were deprived of the right to benefit from—the undivided one-half ownership interest to minerals they

12

contracted to reserve during the time period from 2008 to 2014. So, again, even if the Falens would have filed their negligence claim against RCAT within 2 years after the 2008 deed was recorded, such a claim likely would have been challenged as premature for failing to state a claim upon which relief could be granted, *i.e.*, failing to allege that the Falens sustained damages. See *Bold v. Spitcaufsky*, 24 Kan. App. 2d 135, 142, 942 P.2d 652 (1997) ("In the law, a cause of action cannot be sustained when no damages can be shown.").

For the reasons stated above, we reject the notion that the Falens suffered substantial injury on January 18, 2008, when RCAT recorded the deed in 2008 without reserving the mineral rights for purposes of starting the accrual period set forth in the statute of limitations. Instead, we find the Falens' cause of action for negligence accrued on August 1, 2014, which is when they stopped receiving royalty payments due and owing to them under the 1982 Oil and Gas Lease. The loss of royalty payments represents a substantial and actionable injury that satisfies the damage element essential to the Falens' cause of action for negligence.

b. *Reasonably ascertainable*

The district court characterized the injury sustained by the Falens as the deed being filed and recorded without reserving mineral rights in the Falens' favor. Although acknowledging that the Falens may not actually have become aware until August 1, 2014, that the deed was filed without reserving their mineral rights, the court held they had constructive knowledge of this injury based on K.S.A. 58-2222, which imparts constructive notice to all persons of the content of a deed when it is filed with the register of deeds. Given this constructive knowledge, the district court held the Falens' injury was reasonably ascertainable on January 18, 2008, which rendered the suit barred by the 2-year statute of limitations. In so holding, the court principally relied on *Bi-State Dev. Co., Inc. v. Shafer, Kline & Warren, Inc.*, 26 Kan. App. 2d 515, 990 P.2d 159 (1999).

13

In *Bi-State Dev. Co., Inc.*, the defendant surveyor was hired by the plaintiff landowner to prepare a real estate plat showing a prospective pipeline easement crossing the platted property. After this plat was approved by the local planning commission, the pipeline company presented the plaintiff's agent with an easement that described the pipeline in a location different from the plat previously prepared by defendant. Without consulting the defendant to determine whether the easement described by the pipeline company was consistent with that depicted in the prepared plat, the plaintiff's agent executed the easement, which subsequently was filed and recorded with the register of deeds on June 10, 1986. The plaintiff discovered the difference in the easements in the summer of 1995 and sued the defendant for professional negligence on grounds that the defendant failed to properly locate an easement. Among other reasons, the district court granted summary judgment in favor of the defendant based on expiration of the statute of limitations. A panel of our court affirmed, finding K.S.A. 58-2222 imparts constructive notice to all persons of the content of a deed when it is filed with the register of deeds for statute of limitation purposes. Based on this statute, the court held the plaintiff had constructive knowledge of any error in location of the easement on June 10, 1986, when the agent executed and recorded the document describing the easement in a different location. Given this constructive knowledge, the court went on to hold the plaintiff's injury was reasonably ascertainable on June 10, 1986, which rendered the suit barred by the 2-year statute of limitations. 26 Kan. App. 2d at 519.

Because the facts presented in this case vary significantly from the facts just described, the district court here mistakenly relied on *Bi-State Dev. Co., Inc.* and K.S.A. 58-2222 to determine when the Falens' cause of action for negligence accrued and when the statute of limitations for that cause of action began to run. In *Bi-State Dev. Co., Inc.*, the plaintiff's cause of action for negligence alleged the defendant breached its professional duty to properly locate an easement, which caused the plaintiff to lose a property right in the easement. All benefits attendant to owning the easement

14

extinguished for the plaintiff on June 10, 1986, when the easement was filed and recorded.

For 6 years after the deed was filed and recorded without reserving mineral rights in this case, however, the Falens continued to enjoy the right to use—and continued to benefit monetarily from—the undivided one-half ownership interest to minerals they contracted to reserve. Thus, unlike the facts in *Bi-State Dev. Co., Inc.*, the legal injury sustained when the deed was filed and recorded in this case was neither actionable nor substantial for purposes of starting the accrual period set forth in the statute of limitations. Unlike *Bi-State Dev. Co., Inc.*, this is not a statute of limitations tolling case where the plaintiff alleges a negligent act caused a substantial injury that is not reasonably ascertainable until sometime later. This is a case where a negligent act causes a substantial injury that does not actually *occur* until sometime later. Because it is neither actionable nor substantial, the fact that the Falens are deemed to have constructively known in 2008 that the deed was filed and recorded without reserving mineral rights in their favor is immaterial for purposes of determining the accrual date for the applicable statute of limitations.

But even if this were a tolling case and the Falens were charged with constructive knowledge of the deed being filed and recorded in 2008 without reserving mineral rights, our courts consistently have held the phrase "reasonably ascertainable" to require application of an objective standard that takes into account all of the surrounding circumstances. *P.W.P. v. L.S.*, 266 Kan. 417, 425, 969 P.2d 896 (1998); *Davidson v. Denning*, 259 Kan. 659, 669, 914 P.2d 936 (1996); *Hall v. Miller*, 29 Kan. App. 2d 1066, 1072, 36 P.3d 328 (2001). All of the surrounding circumstances would necessarily require the court to balance the fact that the Falens had constructive knowledge of the deed being filed and recorded without reservation of mineral rights against the fact that they continued for 6 years after the 2008 deed was filed to receive royalty payments, to pay property taxes on those royalties, and to transfer those mineral property rights

15

amongst themselves all in direct contravention of the 2008 deed filed. Thus, even if we were to construe the 2008 paper injury as substantial for purposes of accrual (which we do not), consideration of the totality of the quite unique circumstances presented in this case weigh in favor of a finding that the injury sustained by the Falens was not reasonably ascertainable until on August 1, 2014, which is when LCL first claimed title to the undivided one-half ownership interest to minerals associated with the subject property at issue.

2. *Contract*

The Falens failed to include any argument in their brief challenging the district court's decision finding that their breach of contract claim was barred by the statute of limitations. K.S.A. 60-512 provides that all actions upon a contract that is not in writing must be brought within 3 years. Unlike K.S.A. 60-513, K.S.A. 60-512 does not contain a provision that the statute of limitations commences when the breach is reasonably ascertainable. Therefore, Gregory A. Falen and Julie D. Falen were required to bring their breach of contract claim by January 2011. They failed to do so, and the district court did not err when it granted RCAT's motion for summary judgment on grounds that the statute of limitations had run.

3. *Fiduciary duty*

The Falens allege that they had a fiduciary relationship with RCAT—the title insurance agent, escrow/closing agent, and abstract service provider for the 2008 sale from the MLF Trust to Dean—and that RCAT breached the duty of trust attendant to that relationship. The Falens contend this cause of action is separate and distinct from their claim of negligence in that the breach of fiduciary duty occurred in 2014, not 2008. In support of this contention, the Falens point to the fact that on April 21, 2008—just a little over 3 months after the January 18, 2008, MLF Trust-Dean deed of sale (that failed to

16

reserve mineral rights) was filed and recorded with the register of deeds—the MLF Trust filed and recorded with the register of deeds office a deed conveying those reserved mineral rights to the Falens. And because K.S.A. 58-2222 imparts constructive notice of the contents of a deed to all parties when the deed is filed with the register of deeds, the Falens argue it was April 21, 2008, that RCAT first became aware it had negligently drafted, filed, and recorded the MLF Trust-Dean deed of sale. To that end, the Falens argue RCAT breached the fiduciary duty owed to them on April 29, 2014, by filing and recording a deed transferring ownership of all surface rights and an undivided one-half interest in mineral rights from Dean to LCL with the knowledge (actual or constructive) that it negligently drafted, filed, and recorded the 2008 deed of sale.

The district court dismissed the Falens' claim for breach of fiduciary duty, finding the statute of limitations barred recovery because the facts cited by them to support their 2014 breach of fiduciary duty claim arose out of the same facts cited by them to support their 2008 breach of duty (negligence) claim. Contrary to the finding of the district court, we find the Falens are not barred by the statute of limitations from bringing their cause of action for breach of fiduciary duty. Like their claim of general negligence, we find the claim for breach of fiduciary duty accrued on August 1, 2014, when they stopped receiving royalty payments due and owing to them under the 1982 Oil and Gas Lease.

Having determined that the statute of limitations does not bar the Falens from pursuing a cause of action against RCAT for breach of fiduciary duty, we normally would move on to decide whether a fiduciary relationship existed between the Falens and RCAT and, if so, whether that relationship continued to exist in 2014. But this issue was not raised or briefed by either of the parties on appeal. In fact, the district court specifically declined to rule on this issue, choosing instead to dispose of the claim on procedural grounds. Because the issue has not been raised or briefed by either of the parties on appeal, we similarly must decline to decide it.

17

In sum, we find the 2-year statute of limitations does not preclude the Falens from pursuing claims of negligence and breach of fiduciary duty against RCAT but the 3-year statute of limitations does preclude the Falens from pursuing their breach of implied contract claim against RCAT.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.